---

WILLIAM D. TABOR, Appellant, *v.* THE BOARD OF SUPERVISORS OF ERIE COUNTY, Respondent.

*Supreme Court, Fifth Department, General Term, June 22, 1889.*

*Payment.*—Where, in an action to recover state bounty money, for substitutes furnished, under the call of December, 1864, received by defendant for the use of plaintiff's assignors, in which the defense was payment, there was nothing in the evidence to indicate how many of the substitutes furnished by plaintiff's assignors, were procured, or how many of them were of the number to whom nothing was paid, or to whom a larger or smaller sum was paid, out of the county funds, the defense of payment was not established.

Appeal from an order denying a motion to set aside a verdict, and for a new trial.

*C. H. Keep* and *N. Morey*, for appellant.

*J. M. Humphrey*, for respondents.

DWIGHT, J.—The action was to recover state bounty money, alleged to have been received by the defendant for the use of the plaintiff's assignors—202 in number. The plaintiff alleges that each of his assignors furnished a substitute in the military service of the United States, who

was credited on the quota of the county of Erie, under the call of 19th of December, 1864, for which he was entitled to a bounty of $400, under the provisions of chapter 29 of the Laws of 1865, and that such bounty has been paid by the state to the defendant for the use of such assignors.

For all the purposes of this review we deem ourselves concluded, as to all the principal questions in the case, by the decisions of this court on two former appeals in this action; in which decisions, it may be remarked, neither of the justices, at present composing the court, took part.

Then on the first appeal, decided in 1881, it was held—reversing an order of the special term which denied the plaintiff's motion to set aside a nonsuit and for a new trial—that, upon the case then made, the plaintiff's assignors were within the provisions of the act of 1865 (*supra*); that they were entitled to a bounty under that act; that money, representing the bounties to which they were entitled, had been received by the defendant; that an action, as for money had and received, might be maintained by them, or the assignee, against the defendant; in short, that the plaintiff had make out his cause of action *prima facie*, and that the nonsuit was improperly granted.

On the second trial the case was submitted to the jury substantially upon the issue of payment raised by an averment of the answer to the effect that the county had paid a bounty of $600 to every substitute, mustered into the service, and credited to the quota of Erie county, in the years 1864 and 1865, which payment was made with the consent of the several persons furnishing such substitutes. A verdict was taken for the defendant.

On the plaintiff's second appeal, which was from an order of special term denying his motion for a new trial, this court in 1884 held, that the verdict was without evidence to sustain it, and supported its decision, in an opinion by its presiding justice, by a careful analysis of the questions presented by the plea of payment, and a review of the evidence bearing

upon them.   The conclusion was reached that there was no evidence, whatever, that the county had paid any bounty for the substitutes furnished by the plaintiff's assignors, either to the principals entitled thereto under the statute, or to the substitutes on account of their principals; and that the court erred in refusing the plaintiff's request to direct a verdict in his favor.

On the third trial, which gave occasion for the present review, the case was again submitted to the jury upon the sole issue of payment, all other questions in the case being regarded as disposed of by the previous decisions of the general term.

On this trial the defendant added to the former evidence, relating to the question submitted, only the testimony of the witness Webster.   He was one of the committee engaged in 1864 in filling the quota of the county, and, for that purpose, procuring recruits and paying bounties for enlistments.   He did not attempt to testify to any individual payments, made either to principals or substitutes, nor that payment was made, in any case, to or with the consent of persons furnishing substitutes, but only, in general terms, that county money was paid to all persons who were enlisted, whether volunteers or as substitutes, during the time covered by the complaint.

His testimony was: "The county paid just the same for a substitute as they did for any other volunteer; if a man wanted a substitute and brought his money there, we used the money for him and his benefit, and for the benefit of the county, and the county got the benefit of the substitute just the same as the volunteer; he went to our credit." Later, in his examination, he was understood by the court to testify that substitutes got the county bounty and what the principals paid, besides.   The statement is not credible, and it is doubtful if the witness intended to be so understood. Certainly, it was shown not to be true by the report of the committee, of which Mr. Webster was a member, made to

the board of supervisors, and signed by him.    It contained a summary of the account kept by the committee of their receipts and disbursements in the business of enlisting men, to which account the witness frequently referred in his testimony, as being entirely full and accurate.    That report shows that from the 24th day of June to the 24th day of October, 1864, the date of the report, the committee had enlisted 242 substitutes; that of these, 150 were procured (for persons desiring to furnish them) by the committee, " at an average cost, per substitute (over and above the amount paid by principals), of about $158."    And that the remaining ninety-two, who were procured by agents and others were paid nothing from the county funds.    There is nothing in the evidence to indicate how many of the substitutes furnished by the claimants in this action were procured, or how many of them were of the number to whom nothing was paid, or of those to whom a larger or smaller sum was paid, out of the county funds.

This is substantially all the evidence on the subject of payment.    It is unnecessary to discuss the question whether it makes a case for submission to the jury on the issue made by the answer, of payment, of the full sum of the bounty provided by law, to, or on account of, the persons furnishing the two hundred and two substitutes named in the complaint.    It must be said that the evidence scarcely goes further than to show that something may have been paid out of the county money, to some of the substitutes in question; and is totally ineffective to establish the defense of payment, to any one of the two hundred separate causes of action set out in the complaint.

It seems surprising that evidence was not produced by the defendant upon this question, or its non-production accounted for.    It must be supposed that the committee which disbursed the large amount of money, shown by their report to the board of supervisors, kept books of account, showing date and amount of payments and the

persons to whom they were made. It is not probable that they made such payments without taking receipts therefor. But neither account book nor receipt was produced, nor was any reason given for their non-production.

It is unnecessary to consider any of the questions submitted to the jury for special findings. It is sufficient to say that none of them bear any relation to the single issue upon which the case was submitted for a general verdict. Probably that was sufficient reason why they should not have been propounded to the jury. But the matter is unimportant in view of the disposition to be made of the general verdict. That verdict, having been found without evidence to support it, must be set aside and a new trial granted.

Order reversed, and a new trial granted.

MACOMBER, J., concurs; BARKER, P. J., not voting.